Blackburn v. Reilly.

JOHN R. BLACKBURN v. PATRICK REILLY.

1. Circumstances which, according to the agreement of the parties, are to require the plaintiff to discontinue a pending suit without costs, cannot be pleaded by the defendant in bar of the action. The stipulated relief must be obtained by motion.
2. In contracts for sale of goods, to be executed by a series of deliveries and payments, defaults of either party with reference to one or more of the stipulated acts will not ordinarily discharge the other party from his obligation, unless the conduct of the party in default be such as to evince an intention to abandon the contract or a design no longer to be bound by its terms.

On error to the Essex Circuit Court.

Blackburn, the plaintiff below, a Virginia dealer in bark, entered into a contract on May 13th, 1882, to sell to the defendant below, Reilly, a Newark tanner, for use in his business, fifty-two car-loads of bark at the price of $18 per ton, to be delivered at the rate of one car-load per week until the whole should have been delivered. Under this contract, five car-loads were actually delivered. This was stored by Reilly in a loft over his tannery with other bark. It was all paid for at the contract price by July 3d, 1882, but none of it was used until July 15th. Reilly claims that it was then found to be musty, lumpy and unfit for the purpose for which it had been bought, and shortly after, Reilly notified Blackburn not to send any more, first by mail, alleging that he was overcrowded, and shortly afterward in a personal interview, alleging its unmerchantable condition.

In January, 1883, and before the expiration of the year within which the bark was to have been delivered, Blackburn brought suit, setting forth the above contract and the breach of it. The defendant pleaded the general issue. Before trial, however, the parties came to an understanding and made an agreement in writing, dated March 27th, 1883, which was delivered on April 4th, 1883. By its terms it was stipulated

that the contract for the breach of which suit had been brought, should be completed by the delivery by Blackburn of a sufficient number of car-loads of bark to make, with what had already been delivered, fifty-two car-loads, at the price of $17 per ton, payable on delivery of each car-load. This new agreement then went on to provide as follows:

"4. One car-load only shall be delivered during each week after shipments shall begin, and said shipments *shall* begin on the first day of April next, or within ten days thereafter.

"6. This suit shall not be discontinued or *non prossed* until the final completion of this contract. The plaintiff shall then discontinue it without costs; but in case of a breach of this contract by said Reilly, the plaintiff may proceed in this suit by requiring the defendant to plead, and the suit shall proceed thereon to trial, and the damages to be recovered shall be measured by the original contract sued on. Said Reilly shall, on the execution hereof, pay the taxed costs of the plaintiff. It is understood that this suit is not settled unless the terms of this contract are faithfully carried out by said Reilly."

Blackburn did not deliver any bark within the ten days stipulated, or subsequently. Reilly, on his part, tendered the costs on April 21st, and gave notice that he would not receive any bark under the contract, because of the lapse of time. The tender was refused, and Blackburn insisted on proceeding in the original suit. Reilly then pleaded *puis darrein continuance*, two additional pleas setting forth the new agreement, Blackburn's failure to deliver under it, and Reilly's tender of costs, to which Blackburn demurred, and judgment was given in favor of the demurrant. The case then went to trial on the general issue as originally pleaded, the damages claimed being damages for the breach of the first agreement. The defence interposed was that the delivery of five loads of un-merchantable bark justified the defendant in refusing to receive any more bark under the contract. This defence was overruled by the court, and the plaintiff had judgment. Exceptions being sealed for the defendant, he brought this writ of error.

For the plaintiff in error, *F. W. Stevens*.

I. The court erred in charging the jury that the true test of the right of a party to a continuing contract to put an end to it, is its repudiation by the other party ; that in the case in hand there was no evidence of such repudiation by Blackburn, and that, therefore, though Blackburn for two months continued to furnish unmerchantable bark, the quality of which was not discovered till after payment, Reilly was not at liberty to put an end to the agreement.

This ruling involves the consideration of two distinct questions : (1) When can a party to a continuing contract put an end to it by reason of the failure of the other party to perform his part of it ? (2) Is it true that there was no evidence of any repudiation of this contract by Blackburn ?

These questions will be discussed in their order.

The general rule unquestionably is that in executory agreements for the sale of goods the obligation of the vendor to deliver, and of the buyer to pay, are concurrent conditions in the nature of mutual conditions precedent, and that neither can enforce the contract against the other without showing performance, or an offer to perform, or averring readiness or willingness to perform his own promise. 2 *Benj. on Sales* (*Corbin's ed.,*) § 897. So that if the agreement in this case had stipulated for the delivery at one time of fifty-two car-loads of merchantable bark, instead of stipulating for fifty-two weekly deliveries of the same amount, proof that five of the car-loads sought to be delivered were unmerchantable would justify the repudiation of the entire contract, Reilly would not have been obliged to accept forty-seven car-loads of merchantable and five car-loads of unmerchantable bark.

But, it is said, if delivery is to be made at intervals, the contract then becomes a continuing contract, and the rule is otherwise.

That the authorities on this subject are conflicting is conceded, but that the weight of authority, either in this country or in England, accords with the ruling in the court below, is denied.

The first case bearing directly upon the point at issue is *Withers* v. *Reynolds*, 2 *B. & Ad.* 882. Defendant agreed to furnish plaintiff with straw from October to June, at the rate of three loads in a fortnight, and plaintiff agreed to pay defendant " 33s. per load for each load of straw so delivered on his premises to June 24th." The straw was regularly sent till the end of January, when, plaintiff being in arrears in his payments, called upon defendant and tendered the price of all the straw delivered except the last load, saying that he would always keep one load on hand. To this defendant objected, and after accepting the money tendered refused to send any more straw unless it was paid for on delivery, and no more was sent. It was held that plaintiff could not sue for this failure to send.

Here the only breach was a failure to pay for the last load sent, and a verbal statement " that he [plaintiff] should always keep one load on hand."

The next case is *Hoare* v. *Rennie*, 5 *Hurl. & N.* 19, where the plaintiff, failing to ship the amount of iron he had agreed to ship in the first of the three successive months during which he was to send it, was not permitted to recover damages for the refusal of the defendant to accept in the subsequent months.

The case is directly in point, and while it has been criticised by some of the English judges, in cases to be hereafter mentioned, it has been as strongly approved by other judges of equal reputation, one of whom (Lord Bramwell) is now sitting in the House of Lords.

In *Bloomer* v. *Bernstein*, L. R., 9 C. P. 588, Lord Coleridge based his decision upon the authority of *Withers* v. *Reynolds, supra,* and so directly affirmed it.

*Bradford* v. *Williams*, L. R., 7 *Exch.* 258, was decided upon the authority of Withers *v.* Reynolds, and Hoare *v.* Rennie, and is likewise in my favor.

*Poussard* v. *Spiers*, L. R., 12 *Q. B. Div.* 410, the case of an opera singer who failed (through sickness) to appear on the first night of her engagement, seems to rest substantially on the same foundation.

One of the last cases on this side of the question, decided, too, in the Court of Appeals, is *Honck* v. *Muller*, 7 *Q. B. Div.* 92, where the prior cases are, reviewed. Hoare *v.* Rennie is followed, and *Simpson* v. *Crippin, infra,* disapproved, by a majority of the court.

And, finally, in the case of the Mersey Steel and Iron Company *v.* Naylor, relied upon by the court below, when the case got into the House of Lords, *L. R.*, 9 *App. Cas.* 434, (which was after the verdict in this case,) Lord Bramwell declared that he still adhered to the views expressed by him in Honck *v.* Muller, and dissented from the views of Jessel, M. R., in the case then under review. This is the latest case on the subject.

The cases cited as authorities on the other side are *Weaver* v. *Lessions,* 6 *Taunt.* 154; *Jonassohn* v. *Young,* 4 *B. & S.* 296; *Simpson* v. *Crippin, L. R.,* 8 *Q. B.* 14; *Roper* v. *Johnson, L. R.,* 8 *C. P.* 167; *Brandt* v. *Lawrence,* 1 *Q. B. Div.* 344; *Freeth* v. *Burr, L. R.,* 9 *C. P.* 208, and *Mersey Steel and Iron Company* v. *Naylor,* 9 *Q. B. Div.* 648, in the Court of Appeals. They do not all hold the same doctrine. In Simpson *v.* Crippin, plaintiff's agreement was to take "from 6000 to 8000 tons of *. * *, coal * * * in equal monthly quantities during the period of twelve months." He took only one hundred and fifty-eight tons during the first month, and for this breach defendant canceled the contract. *Held,* that he was not justified in so doing, by a majority of the court, against the opinion of Mellor, J., who thought Hoare *v.* Rennie was undistinguishable from the case then in hand. In Roper *v.* Johnson, which came up immediately after Simpson *v.* Crippin, and which was exactly similar, there was no argument on the point, counsel conceding that the decision of a co-ordinate division of the court would be followed, and that the proper tribunal in which to argue the question was the appellate court.

Simpson *v.* Crippin goes farther than any other case, and holds that the failure (no matter how inexcusable) on the part of the vendee to comply at the outset with the terms of his contract, will not justify the vendor in rescinding it. The

case is directly opposed to Honck v. Muller, afterwards decided in the Appellate Court, and is not sustained by *Freeth* v. *Burr*, and the *Mersey Steel and Iron Co.* v. *Naylor, supra*, which merely hold, in the language of Lord Coleridge, that "in cases of this sort, where the question is whether the one party is set free by the action of the other, the real matter for consideration is whether the acts and conduct of the one do or do not amount to an intimation of an intention to abandon and altogether refuse performance of the contract;  *   *   *   the true question is, whether the acts and conduct of the party evince an intention no longer to be bound by the contract."

It is respectfully submitted that the rule, as laid down in Simpson v. Crippin, even as modified by Freeth v. Burr, is opposed to the weight of authority, to analogy, and to reason. The last-named case is a compromise between Hoare v. Rennie and Simpson v. Crippin, and is opposed to the course of decision on analogous questions.   It makes the question one of *intent*, to be settled by a jury, rather than of *law*, to be decided by the court.   It is as if in *Smith* v. *Brady*, 17 *N. Y.* 174, the court had left it to the jury to say whether, when the plaintiff put the joists in the cottages he was building, sixteen inches apart, instead of twelve, as the contract called for, he *intended* to violate his contract.

Again, on principle, why should not the parties to a continuing contract be held as strictly to their engagements as they are on any other species of contract?   The cases of *Tamvaco* v. *Lucas*, 1 *E. & E.* 581, and *Smith* v. *Brady*, 17 *N. Y.* 174, illustrate how strictly parties are held to their agreement, and in the case of *Bozarth* v. *Dudley*, 15 *Vroom* 304, our own courts have preferred to adhere to that line of decision which compels a strict performance rather than resort to the so-called equitable rule prevailing in Massachusetts, which allows a recovery without performance.

The true distinction is that suggested by the court in Honck v. Muller, that "*where no part* of a contract has been performed, and one party to it refuses to perform the entirety to

be performed by him, the other party has a right to refuse to perform any part to be performed by him."

And all the cases relied upon by the defendant in error, except Simpson *v.* Crippin, can be reconciled on this distinction. Thus, in Weaver *v.* Sessions, the breach of the covenant occurred some time after the lease had gone into effect; when, is not stated in the plea, and the same remark applies to Jonassohn *v.* Young and Brandt *v.* Lawrence. If, before a breach, a considerable part of the contract has been performed by both parties to it, it seems impossible to assert that the covenant afterward broken will go to the whole of the consideration. In such a position of affairs, the court does not relieve the party from the consequences of his breach, from any desire to excuse it, but because of the impossibility of undoing what has already been done; the contract has been in part performed, and the court must deal with it accordingly. To give a cross-action for damages is all that is practicable; and this is in strict accordance with the third rule given by Sergeant Williams, in his note to *Pordage* v. *Cole,* 1 *Wms. Saunders* 320, *note b;* but where the first act of one of the parties to an agreement is a palpable violation of it, in a term, too, which is seen to be of the essence of it, why should he be permitted to assert—"I admit that I have broken my agreement from the outset—that I have not as yet performed a single term of it—and yet I call upon you, who have sought to rescind it because of my breach, to pay me damages, because of such rescission?"

The case in hand is a strong illustration of the evils that would attend the rule as enunciated in the court below. A bark manufacturer makes a *continuing* contract, in order that he may have a regular supply of good bark the year round. The tanning of hides must go on without interruption, (as the evidence in this case shows); if it did not, hundreds of skins costing thousands of dollars would be spoiled. The process is absolutely dependent upon a constant supply of the liquor which the bark yields. His covenant to pay is made only because of the covenant of the vendor to furnish a regular

supply of the bark at the times agreed upon. If the bark be unfit for use, or be not delivered at the times agreed upon, the principal, if not the only, consideration for the buyer's contract, is gone. Why the vendor should, at the outset, be allowed to violate a fundamental part of his agreement, and yet the vendee be without power to put an end to it, and so secure himself against loss, is hard to perceive. Even if the question *were* one of fact—was it necessary to the defendant's business that this bark should be regularly furnished and be merchantable, that, at least, ought to have been left for the consideration of the jury.

*Second.* But it is contended, further, that even if this court should adopt the rule as declared in Freeth *v.* Burr and the Mersey Steel and Iron Company *v.* Naylor, then it ought to have been submitted to the jury as a question of fact, whether the continued failure to deliver merchantable bark for nearly two months was not evidence from which a jury would be at liberty to infer an intention wholly to abandon the contract. In considering this question, the jury would naturally have more regard to the acts of the plaintiff than to his words. Will it be said that five unequivocal acts in violation of the contract, and none in pursuance of it, were an insufficient foundation for this inference. How many acts, then, must the plaintiff do, in order to justify the court in submitting them to the jury—twenty, thirty or forty? Is their precise number a question of law for the court? It is submitted that even if the court should adopt the rule in Freeth *v.* Burr, the court below erred in not submitting to the jury, on the question of intent to abandon or disregard the contract in its entirety, the plaintiff's acts in violation of it.

The American cases are all stated in Mr. Corbin's note to *Benj. on Sales, vol. II.,* § 909. He comes to the conclusion that the weight of American authority is opposed to Simpson *v.* Crippin. A perusal of those generally cited in this connection shows that most of them touch but slightly the point under consideration; of those that do the majority are in accord with Hoare *v.* Rennie. The following cases are in

point: *King Philip Mills* v. *Slater*, 12 *R. I.* 82; *Stewart* v. *Mary*, 7 *Ill. App.* 508; *Bradley* v. *King*, 44 *Ill.* 339; *Norrington* v. *Wright*, *U. S. Cir. Ct.*, 11 *L. Rep.* 287.

II. The Circuit Court erred in adjudging that the facts stated in defendant's pleas *puis darrein continuance* were insufficient in law to bar the plaintiff's action.

The agreement set forth in the pleas, if not broken by the defendant, is a complete answer to the plaintiff's declaration. *Good* v. *Cheesman*, 2 *B. & Ad.* 328; *Cartwright* v. *Cook*, 3 *B. & Ad.* 701; *Babcock* v. *Hawkins*, 23 *Vt.* 561; *Evans* v. *Powis*, 1 *Exch.* 602.

It is respectfully insisted (1) that the agreement was not broken by the defendant; (2) if it was, that such breach went only to an insignificant part of the consideration, and was not, therefore, such an one as justified the plaintiff in rescinding the new contract and continuing his suit on the original one.

*First.* The defendant, Reilly, did not break the agreement set out in the plea. The only breach pretended is his failure to pay the taxed costs before April 21st. The agreement was delivered April 4th. It stipulated that "said Reilly, on the execution thereof, pay the taxed costs of the plaintiff," and these costs were actually tendered April 21st. (April 23d, in the printed copies, is a mistake.) It is quite manifest that the costs were not to be paid contemporaneously with the delivery of the agreement. Had that been the intention, the plaintiff would not have accepted it without such payment, but the allegation of the plea is that it *was* accepted and received. But if they were to be paid after delivery, the defendant had a reasonable time in which to tax and pay them. The plaintiff (so the allegation of the plea is) failed to deliver a taxed bill of costs, and so the defendant was obliged to tax them. Considering that the issue was one pending in the Supreme Court, and that the defendant and the attorneys of both parties resided and had their offices in Newark, can it be said, *as a matter of law*, that seventeen days was an unreasonable time in which to do this, when the statute allows thirty

days' time in which to file so simple a plea as that of the general issue. And yet the court held the plea bad on this ground alone.

*Second.* But even if the tender came too late, the agreement to pay costs went only to a very insignificant part of the consideration. The court below was very inconsistent in holding that five successive failures of the plaintiff to furnish merchantable bark, did not go to the root of the matter, so as to justify the defendant in rescinding the first agreement, and yet that the failure of the defendant to pay costs—a thing collateral—which, according to all the cases, went only to a part of the consideration—justified the plaintiff in rescinding the second agreement. In *Boone* v. *Eyre*, 1 *H. Bl.* 273, *note*, it was held that if A covenant with B, that for a gross sum of money and for an annuity, he will convey a plantation, and also the negroes upon it, and he conveys the plantation, but not the negroes, a plea setting up a failure of title to the negroes is no answer to an action brought for non-payment of the annuity, for, say the court, failure of title to a single negro would otherwise bar the action. This case is stated fully in the note to *Pordage* v. *Cole*, 1 *Wms. Saunders* 320, *note b*, and is directly in point.

If it be said that the agreement provided that in case of a breach of it by Reilly, the plaintiff might proceed in the original suit, on this point; also, Boone *v.* Eyre is in point, for B there covenanted "that A well and truly performing all and everything therein contained on his part he would pay the annuity," thus providing for the consequences of a breach in language far stronger than that used in the agreement between Reilly and Blackburn. The breach here contemplated is manifestly such a breach as would justify a rescission of the contract. It was a breach of the contract as a whole, such a breach as went to the root of the matter, and would have justified Blackburn in bringing a suit to recover damages for refusal on the part of Reilly to receive, not one particular carload of bark, but all the car-loads which Reilly had agreed to take, and this is the more apparent from the consequence

which was to follow, viz., "the damages to be recovered shall be measured by the original contract sued on," that suit having been brought, and brought only, for refusal to receive the bark.

The concluding clause, "it is understood that this suit is not settled unless the terms of this contract are faithfully carried out by said Reilly," is mere repetition, and adds nothing to what has been already said.

It is probable that the glaring inconsistency of holding Reilly to the rule laid down in Simpson v. Crippin, in respect of the original agreement, and yet entirely disregarding it in the case of Blackburn, in the construction of the new agreement set out in the pleas, escaped the attention of the court below, for the reason that the demurrer to the pleas was argued some time before the case came to trial, when all the cases bearing on the subject were more carefully considered by court and counsel.

In nearly every contract the provision, express or implied, is that one party shall be liable to perform only in case the other party performs, or that the performance by one party shall be dependent upon performance by the other; but in the case of continuing contracts, the court, in the cases cited by the other side, thought it necessary to make a distinction, and wherever a breach by one party did not, to use their expression, go to the root of the matter, the other party was not justified in rescinding, and this, though the mutual covenants seemed to be dependent, and performance by one party seemed to be dependent upon performance by the other. The plaintiff is in this dilemma: if the court adopts the rule laid down in Honck v. Muller, then clearly the charge to the jury is wrong; if it adopts that laid down in Simpson v. Crippin, then the judgment overruling the pleas is wrong, for that rule does not permit rescission, unless the act relied upon go to the root of the matter—viz., to the whole consideration—while here the payment of costs went only to an inconsiderable part of it, and was merely collateral, according to all the decisions.

There is this further difficulty about the plaintiff's case:

By his demurrer he admits, in the language of the plea, ".that he failed to make any shipments of bark within the ten days after the said first day of April then next ensuing, as in said agreement it was stipulated, or at any time subsequent thereto " —the first breach on his part occurring April 10th, before it could be claimed that the defendant was in default as to costs (if he was in default at all.)   The plaintiff having broken the agreement himself, and that, too, in a vital point, does it lie with him to complain of the defendant?

For the defendant in error, *Joseph Coult.*

I.  The first question arises on demurrer to second and third pleas, which was sustained.

The suit was on a contract for sale of bark.   Blackburn claimed damages for breach.

After declaration was filed a settlement was agreed on, and reduced to writing, a copy of which is in the record, page 4.

This settlement agreement was not carried out, and the defendant was ruled to plead.

The pleas filed were:

1.  General issue.

2.  By way of pleas *puis darrein continuance,* accord and satisfaction.

3.  Same plea in another form.

The demurrer was to the second and third pleas, and the objection was that they set out only an accord, and no satisfaction.

*The Second Plea.—First.*   This plea sets out the agreement of settlement *in his verbis.*   It says that it was delivered on April 4th, and that it " was delivered by said defendant and accepted and received by said plaintiff, of and from said defendant, in full satisfaction and discharge of the said several promises in said declaration mentioned, and of all damages and sums of money thereupon due and owing or accrued."

There is, then, an averment that plaintiff did not carry out the agreement, but that defendant tendered costs and was ready to carry out the agreement on his part.

The demurrer to this plea raised the question as to whether an unexecuted agreement (and this one appears on the face of the plea to be unexecuted), could be pleaded as an accord and satisfaction.

Blackstone says that an *accord* is a satisfaction agreed on between the parties, which, *when performed*, is a bar to all actions on this account. This is a definition which seems to be accepted by all the courts as a true exposition of the law.

"An accord is one thing, a satisfaction another, but an accord executed is one entire thing, and is a complete bar."

This point arose in New Jersey in the case of *Oliver* v. *Phelps, Spencer* 180.

The question arose in this way: Phelps, a landlord, took the goods of Oliver, his tenant, by distress for rent, and the tenant brought an action of trespass *de bonis*, alleging that the rent had been satisfied by an agreement that the landlord's daughter should be educated at a seminary which the tenant proposed to establish on the leased premises. The Supreme Court held that the *agreement* was inadmissible, and in disposing of the question, Hornblower, C. J., says:

" The difficulty is created in the mind of counsel by considering an accord and satisfaction as one entire thing. It is so when executed, but an accord is one thing, and satisfaction, or the execution of it, is another. An accord executory—that is, an agreement that the debtor shall give and that the creditor shall receive a hawk or a horse in satisfaction of the debt —is no bar; but an accord executed—that is, the agreement carried into effect—is a complete bar."

The case went to the Court of Errors, and was affirmed on this and other points. *Oliver* v. *Phelps*, 1 *Zab.* 597.

The law on the subject of accord and satisfaction is fully discussed in 1 *Smith's Lead. Cas.* 445, where it is laid down that three things are necessary to make an accord and satisfaction.

1. The matter agreed to be received in satisfaction of the debt must be something of legal value, to which the creditor was not before entitled.

2. Every part of the matter must be effectual.

3. The accord must be executed. A mere executory agreement by a debtor can never be pleaded as an accord and satisfaction.

A plea of an accord and a readiness on the part of the defendant to perform it, or of a tender of performance, is bad on demurrer. *Russell* v. *Lytle*, 6 *Wend.* 390; *Hawley* v. *Foote*, 19 *Wend.* 516.

It may be objected that the ruling in *Morris Canal Company* v. *Van Voorst*, 1 *Zab.* 100, militates against this doctrine.

There the third plea was that the principal named in a bond, who had defaulted, had given his *note* in full satisfaction of the condition of the bond, and that it was accepted by the plaintiff in full satisfaction, and this plea was held good on demurrer.

The question was not whether a promissory note could be pleaded as an accord and satisfaction, but whether an accord and satisfaction could be pleaded to a suit on a bond, and this is the only question discussed in the opinion on that plea.

The equally important question as to whether the note was a satisfaction receives no attention, and we submit that the case is not well considered.

The case is founded on *Strang* v. *Holmes*, 7 *Wend.* 223, where the point was whether a deed of conveyance *accepted*, could be alleged by way of accord and satisfaction to a suit on a bond.

In the old case of *Cock* v. *Honychurch*, *T. Raym.* 203, 2 *Keble* 690, cited in 2 *Pars. on Cont.* 681, the case was trespass for an assault. The plea was a *concord* between the parties that the defendant should pay plaintiff £3 and his attorney's bill; that he had paid the £3, and was ready to pay the attorney's bill, but he never showed him any. *Held*, no defence, because not wholly executed.

A tender of performance is no bar. *Brooklyn Bank* v. *De Grauw*, 22 *Wend.* 342. In *Noe* v. *Christie*, 51 *N. Y.* 270, the accord was that the defendant should pay $70 and costs. Lott, C. J., says: "It is conceded that the costs required

to be paid under the agreement set up were never, in fact, paid, and assuming that they were tendered, that fact was not equivalent to its [the accord's] execution.   It was, nevertheless, at most, a simple unexecuted accord, and was not satisfaction."   Citing *Day* v. *Roth*, 18 *N. Y.* 448.

*Second.*  A comparison of the contract set out in the declaration, with the settlement contract set out in the plea, shows that the two are identical in all material points excepting the price. The price in the original contract was $18 per ton ; in the settlement agreement, $17 per ton.   The quantity to be delivered was the same, the place of delivery was the same.   Nothing is said about the quality of the bark in the original contract, but it must be understood to be good, merchantable bark.

Now, the original contract is broken, and the parties come together to settle a suit brought to recover damages for the breach ; they enter into a contract similar to the original one, and the defendant claims that not having executed the second one, he may avoid the first one.

The contracts are so similar that one ought not to be taken as a satisfaction of the other.

It is a promise for a promise.

An open account is not extinguished by a note which is not paid at maturity, and suit will lie on the account.

The matter given must be something to which the creditor theretofore had no right.   Here the plaintiff had a legal right to everything which he got under the second agreement.   The defendant got what he had no legal right to—a reduction in the price—and he ought not to allege that as a reason for abrogation of the original contract.   See 1 *Smith's Lead. Cas.* 456, § 3.

*The Third Plea.—First.* This plea is accord and *tender*, and is liable to all the objections made to the second plea.

Besides, it shows that the tender was made after refusal to perform, April 21st.

We submit that there is no error in this part of the record.

II. The second most important question which we have to consider is, whether the direction of the court on the trial overruling the defence interposed by the defendant was correct.

As has already been stated, the action was for a breach of contract. The breach complained of was a refusal of the defendant to receive the bark which he had contracted to take and pay for. He sought, on the trial, to excuse himself by showing or offering evidence tending to prove that the bark which he had received under the contract and paid for was of an inferior quality, not merchantable bark.

The precise question is this: In a contract for successive deliveries, each delivery to be paid for when received, will a failure on the part of one party to make one of the deliveries, according to the terms of the contract, authorize the other to rescind the contract entirely, and refuse to accept any further deliveries when tendered, according to the terms of the contract?

This question has recently received much attention from the courts, and is of very great importance to the mercantile community.

It does not seem needful or proper that we should make an abstract of the cases in our brief; they have been carefully collected and compared in the second volume of *Benj. on Sales* (*4th Am. ed.*,) § 901, *p.* 782, and in the elaborate notes of the American editor at page 787; also in the still more complete notes of Mr. Landreth of the Philadelphia bar, to the case of *Norrington* v. *Wright*, 21 *Am. L. Reg.* (*N. S.*) 395. These cases show that this subject has been forced upon the attention of the courts by the constantly increasing number and importance of the questions of this class, which have arisen as the business of the country has progressed and become more complicated. In the case under consideration an examination of the evidence clearly shows that the plaintiff, if in fault at all, was without any information from the defendant at the time when he terminated the contract, and refused to accept the bark, of the fact. Correspondence between the parties, shows that he was at the time anxious to proceed with

the contract on his part according to its terms.   There is noth-
ing in this case to show that the plaintiff wilfully or intention-
ally failed to perform the contract on his part.   If the bark
delivered, or any part of it, was not of good quality, it is not
shown that this fact was within his knowledge or brought to
his attention.   All the bark delivered was paid for by the
defendant, according to the contract, except the last car-load,
which he refused to receive.   The refusal to receive this or
any other bark under the contract was not placed upon the
ground that the bark delivered and paid for was not of a
merchantable quality.   From the correspondence it would
seem that all the bark received and paid for had been accepted
and passed upon ; and that the reason for the refusal was that
the defendant wanted no more bark at $18 per ton.

If the doctrine—which seems now to be well established—
is " that in contracts where a breach by the party suing is a
breach of only a part of the consideration moving from him,
and such breach can be compensated in damages without any
necessity of annulling the whole contract, that a true construc-
tion of such a contract is, that it is not a condition precedent
to the obligation to tender or accept a part ; and that the other
party should have been or should be always ready, willing and
able to accept or tender the whole," then it applies to this case
with great force.   The circumstances bring this case clearly
within the reasoning of the court in Jonasohn v. Young, Simp-
son v. Crippon, Freeth v. Burr, Houch v. Miller, and Mersey
Steel and Iron Co. v. Naylor.

Scott v. Kittanning Coal Company, 89 Penna. St. 231, 237,
is very much in point.

We mention this case because it is cited with approval by
Mr. Corbin, although he doubts the correctness of the doc-
trine when applied to cases where the circumstances are not
similar.   We cite this case to show that even though he doubts
the correctness of the main proposition, he admits that in cases
similar to ours no reason exists why the contract should be
deemed at an end.

It cannot be possible that a slight defect in one of many

deliveries, each of which is independent of the other, and each of which may well form a separate and distinct contract between the parties, should be held to authorize the other party to put an end to the entire series of contracts; the consequence of such a contract would be very disastrous. It would enable one party to take advantage of a good contract and hold the other to a strict performance of the same, and yet repudiate it entirely, as if it should become to his interest to do so, if he could find the slightest defect in a portion of the goods received by him, although the other party was entirely ignorant of the defect and willing to make good any loss suffered thereby.

The comments of Sir William Bret, in his opinion in the case of *Renter* v. *Sala*, *L. R.*, 4 *C. P. Div.* 256, seem to cover the points very fully.

We feel certain that the doctrine contended for by the plaintiff in error, which does not seem to be sustained by either reason or authority, will never receive the sanction of this court.

The opinion of the court was delivered by

DIXON, J. The first question for decision on this writ of error is whether the pleas *puis darrein continuance* were good.

They were pleaded in bar of the action, and a prime requisite of such pleas is that they shall allege facts which form a conclusive answer to the action and entitle the defendant to a final judgment in the cause. 1 *Ch. on Pl.* 525. The express terms of the contract, relied on in these pleas, show that nothing growing out of and dependent upon that agreement could have this broad effect in favor of the defendant. According to its provisions, the defendant was forthwith to pay the costs of this suit; in case he failed to comply with its stipulations, the suit was to proceed as if the contract had not been made; and if he fully performed it, the plaintiff was to discontinue the suit without costs. So that the effect upon the pending litigation, which could result from circumstances the most favorable to the defendant, was that the plaintiff could be compelled to discontinue it without costs. That is quite dif-

ferent from the judgment for defendant to be rendered upon a good plea in bar, which would award costs to the defendant and be conclusive in his favor upon all subsequent litigation involving the same issues. It is evident that the effect which the parties intended to produce on the pending suit, by force of this agreement, could be properly secured only by motion, not by plea. The demurrer to these pleas was good.

The other question discussed on the argument was, whether the defendant had the right to refuse to receive any more bark in case he could satisfy the jury that the five loads of bark delivered were not equal in quality to the requirements of the contract.

The contract provided that the plaintiff should deliver and the defendant should receive one car-load of bark weekly for a year at $18 a ton, payable on delivery. It belongs to a class of agreements sometimes called continuing contracts of sale, because they are to be completely performed, not by single acts of delivery and payment, but by a series of such acts at stated intervals.

The rule to be applied in determining whether the express obligations of such contracts remain, after one or more breaches by either party, has been the subject of much discussion of late years, and has given rise to some contrariety of judicial opinion. We do not feel constrained by the phases of the present case to enter at any length upon the details of this discussion. In our opinion, the rule established in England by the judgment of the House of Lords in *Mersey Steel and Iron Company* v. *Naylor*, 9 *App. Cas.* 434, affirming the judgment of the Court of Appeals in *S. C.*, 9 *Q. B. D.* 648, is one which in ordinary contracts of this nature will work out results most conformable to reason and justice. The rule is, that defaults by one party in making particular payments or deliveries will not release the other party from his duty to make the other deliveries or payments stipulated in the contract, unless the conduct of the party in default be such as to evince an intention to abandon the contract or a design no longer to be bound by its terms. This rule leaves the party

complaining of a breach to recover damages for his injury on the normal principle of compensation, without allowing him the abnormal advantage that might enure to him from an option to rescind the bargain. It also accords with the ancient doctrine laid down by Serjeant Williams in his notes to *Pordage* v. *Cole*, 1 *Saund.* 320, *b*, that where a covenant (of the plaintiff) goes only to part of the consideration on both sides, and a breach of such covenant may be paid for in damages, it is an independent covenant, and an action may be maintained for a breach of the contract on the part of the defendant without averring performance in the declaration. It, of course, is inapplicable where the parties have expressed their intention to make performance of a stipulation touching a part of the bargain, a condition precedent to the continuing obligation of the contract; and peculiar cases might arise where the courts would infer such an intention from the nature and circumstances of the bargain itself, cases in which the courts would see that the partial stipulation was so important, so went to the root of the matter (to use a phrase of Blackburn, J., in *Poussard* v. *Spiers*, 1 *Q. B. D.* 410,) as to make its performance a condition of the obligation to proceed in the contract.

The case in hand is one of ordinary character, and, therefore, the question under the rule is, whether the circumstances would warrant an inference by the jury that the plaintiff purposed to abandon the contract, or no longer to be bound by its terms. This question is, we think, not doubtful. The plaintiff had delivered five car-loads, which had been accepted and paid for by the defendant, without any intimation that they were not satisfactory, was ready to deliver the sixth when the defendant requested delay, and was prevented from further deliveries only by the peremptory refusal of the defendant to receive any more. Against this refusal the plaintiff protested, then proposed an arbitration, and threatened suit if the defendant should persist, and, finally, brought this action for damages. In the face of all this there is not a shadow of reason for saying that the plaintiff had abandoned or repudi-

ated the contract. If the five deliveries of defective bark had been made against notice and remonstrance, it might have suggested the idea that the plaintiff meant to disregard his obligations, but by the defendant's acceptance of and payment for the bark without objection, this ground for a possible inference of repudiation is wanting in the case. We regard it as incontestable that the deliveries were made in recognition of the binding force of the agreement. The defendant, therefore, was not discharged.

*Cahen* v. *Platt,* 69 *N. Y.* 348, was precisely like the case before us. The plaintiff had agreed to sell the defendant glass to be delivered in installments. He had made several deliveries which had been accepted and paid for by the defendant. Subsequently, the defendant complained of the quality and refused to receive any more. The suit was for damages resulting from the refusal, and the plaintiff recovered. *Scott* v. *Kittanning Coal Co.,* 89 *Penna. St.* 231, was also similar, but there the defendant contended that the conduct of the plaintiff in the delivery of the defective coal was fraudulent. Yet, the court held the defendant would not be thereby discharged.

There was no error in the ruling of the trial justice on this proffered defence.

The judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, REED, SCUDDER. VAN SYCKEL, BROWN, CLEMENT, COLE, PATERSON, WHITAKER.   11.

*For reversal*—None.