EMPIRE RUBBER MANUFACTURING COMPANY v. WILLIAM
McKAY MORRIS ET AL., PARTNERS, &c.

Submitted December 7, 1908—Decided March 1, 1909.

1. A request to charge which rests upon a fact assumed to be conclusively proved, but which in reality is in dispute, should be refused.

2. On a contract for the sale of merchandise, where the seller has agreed to deliver the goods sold in installments, and the buyer has agreed to pay the price in installments which are proportioned to and payable on the delivery of each installment of goods, the default by either party with reference to any one installment will not, ordinarily, entitle the other party to abrogate the contract.

On error to the Supreme Court.

For the plaintiffs in error, *John H. Backes* and *James Buchanan & Malcolm G. Buchanan.*

For the defendant in error, *John M. Dickinson.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.    This suit was brought by the Empire Rubber Manufacturing Company against Morris & Company, to recover damages for the breach of a contract entered into between the parties for the purchase and sale of a certain quantity of cotton duck, a product which the defendant manufactured.   On the original trial of the case errors crept in which required a reversal by us of the judgment entered therein upon the verdict of the jury.   *Empire Rubber Manufacturing Co.* v. *Morris et al.,* 44 *Vroom* 602.   The case went back for a new trial, and the jury found in favor of the plaintiff, assessing its damages at $5,568.91.   To review the judgment entered upon that verdict the present writ of error is sued out.

The contract between the parties is contained in the written correspondence which passed between them, and, as construed by us in our earlier review, provided for the sale and delivery

by the defendants to the plaintiff of six hundred and forty-six rolls of duck at seventeen cents per pound, three per cent., ten days, the delivery to be at the rate of thirty to forty rolls per month during July and August of 1903, and at the rate of sixty rolls per month thereafter, upon requisitions to be furnished by the plaintiff to defendants. Deliveries were made from time to time running from July to December 31st, 1903, aggregating one hundred and twenty-eight rolls, and a bill for each delivery was sent with it. Payments for these deliveries were made at periods varying, in the most part, from twelve days to six weeks thereafter, notwithstanding that the defendants were constantly insisting that the provision in the contract relating to payments required the settlement of each bill within ten days after delivery, and were constantly protesting against the plaintiff permitting more than that period to elapse without making payments. On the other hand, the plaintiff was constantly complaining at the failure of the defendants to fill its requisitions as provided by the contract, and was continually calling on them for more deliveries. Finally, about the middle of January, 1904, the defendants refused to make further deliveries because of the plaintiff's failure to pay within the ten days. Thereupon the plaintiff announced that it would go upon the market and buy the balance of five hundred and eighteen rolls of duck and charge the defendants with any excess price, and this it proceeded to do. The present suit was brought to recover the difference between the contract price and the price paid by the plaintiff for the five hundred and eighteen rolls.

The ground upon which the defendants seek a reversal of the judgment is that the trial judge should have submitted to the jury, in compliance with their request, the question whether the plaintiff did not, by its repeated defaults in payments, evince an intention no longer to be bound by the terms of the contract, and so release the defendants from any obligation of further performance on their part.

The defendants' request, it will be observed, assumes that the plaintiff was in default in not making its payment in ten days after delivery. The soundness of this assumption is, at

least, doubtful. The contract makes no express provision with relation to the time when the deliveries of duck were to be paid for. The terms of payments are "17 cts. per pound 3 p. c. ten days." The time of payment, so far as it is expressed in the contract, is contained in this provision. The meaning given to the words "3 p. c. ten days" in the trade is stated by William Morris, one of the defendants, in his testimony in the cause, to be "the purchaser can deduct three per cent. from the face of the bill if paid in ten days." He is confirmed in this statement by one of the witnesses examined on the part of the plaintiff, who says that the meaning of this provision in the trade is that "the purchaser must pay within ten days or lose the discount." This is the whole of the evidence with regard to the meaning of this provision. How much more time, if any, than ten days the purchaser is entitled to have, by the usage of the trade, within which to pay the bill without discount, the testimony does not disclose. It would seem, therefore, that the ten-day limit fixed by the contract merely relates to the time in which the plaintiff was entitled to claim a discount from the face of the bills rendered to it, and that the contract was silent as to the period within which payments without discount were to be made.

Turning from the words of the contract to the actions of the parties under it, it may be conceded that the constant claim of the defendants, insisted upon all through the period when they were making their deliveries, that the limit of the credit extended by them was ten days, coupled with the fact that the correctness of their insistment was not at any time denied by the plaintiff, except so far as its delay in making its payments was a denial, was some evidence that, as between the parties, this provision of the contract was meant to fix ten days as the extreme limit of the credit extended to the plaintiff. But, with this concession, the most that can be said in favor of the defence is that the question whether the plaintiff violated its contract by failing to make its payments within the time required thereby was one for the jury, while the instruction which the judge refused, as has been pointed out, required the judge to solve that question in favor of the defendants.

Moreover, the claim of the defendants that the repeated defaults in payment by the plaintiff (if such defaults had been conclusively proved) would have justified the jury in finding that the plaintiff thereby evinced an intention no longer to be bound by the terms of the contract, and so released the defendants from any obligation of further performance on their part, is unsound. The rule adopted by our courts with relation to contracts like the present is that "when the seller has agreed to deliver the goods sold in installments, and the buyer has agreed to pay the price in installments which are proportioned to and payable on the delivery of each installment of goods, then the default by either party with reference to any one installment will not, ordinarily, entitle the other party to abrogate the contract." *Gerli* v. *Poidebard Silk Manufacturing Co.,* 28 *Vroom* 436, 437; *Blackburn* v. *Reilly,* 18 *Id.* 290; *Trotter* v. *Hecksher,* 13 *Stew. Eq.* 612; *Otis* v. *Adams,* 27 *Vroom* 38. This rule is controlling unless the conduct of the party in default be such as to evince an intention to abandon the contract and no longer be bound by its terms. No such intention on the part of the plaintiff can be gathered from the proofs in the present case. On the contrary, its continual demands on the defendant to make the deliveries called for by the contract, its threat to go into the market and purchase the quantity of duck which yet remained undelivered if the defendants refused to make those deliveries, and its execution of that threat as soon as the defendants announced that they would make no more deliveries, show conclusively that its intention, from first to last, was to hold to the contract, and require its performance by the defendants. *Otis* v. *Adams, supra.*

The judgment under review will be affirmed.

*For affirmance*—The Chancellor, Chief Justice, Garrison, Swayze, Reed, Trenchard, Parker, Bergen, Voorhees, Minturn, Bogert, Vredenburgh, J.J.   12.

*For reversal*—None.