## BRIGHTON MILLS v. BIGELOW.

(Circuit Court of Appeals, Third Circuit. May 31, 1922. Rehearing Denied October 10, 1922.)

No. 2811.

1. Sales ⬸370—Seller, claiming damages for buyer's breach, bound to show delivery as agreed or excuse for failure.

Before a seller could recover damages for the buyer's alleged breach by refusal to accept, it was bound to show performance on its part or a valid excuse for its failure to make deliveries in the quantities and at the times promised.

2. Sales ⬸177—Seller's failure to make deliveries as agreed held not waived, and to justify buyer in refusing to proceed further.

Under contract for the sale of tire fabric to be delivered in monthly installments, the seller's failure to make deliveries as agreed held not waived by failure to object to the seller's monthly reports or otherwise, where the buyer was requesting deliveries, and to justify the buyer in refusing to proceed further under Uniform Sales Act of New Jersey, § 45 (2).

3. Sales ⬸89—Time for delivery under contract held modified by subsequent agreements.

Where subsequent to contract for sale of tire fabric to be delivered in monthly installments ending June, 1920, two contracts were made for

---

⬸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

additional amounts, and the buyer requested shipments of equal quantities in March, April, May, June, and July, the delivery terms were thereby modified, by extending them one month.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Proceeding on a claim by the Brighton Mills against John O. Bigelow, receiver of the Trent Rubber Company. From an order affirming an order of the receiver, the claimant appeals. Affirmed.

Wall, Haight, Carey & Hartpence, of Jersey City, N. J. (Thomas G. Haight, of Jersey City, N. J., and Herbert J. Lyall, of New York City, of counsel), for appellant.

McCarter & English, of Newark, N. J. (Conover English, of Newark, N. J., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. This appeal is from an order of the District Court affirming an order made by a receiver—after trial before him in a proceeding peculiar to the laws of New Jersey—disallowing a claim filed against the receivership. The central facts of the case are as follows:

Brighton Mills is a corporation engaged in the manufacture of fabric used in making automobile tires, with a plant at Passaic, New Jersey. The Trent Rubber Company is a corporation which was engaged in the manufacture of automobile tires, with a plant at Trenton, New Jersey. On July 29, 1919, the two corporations entered into a written contract whereby the Mills promised to sell at named prices a large quantity of fabric of different kinds and to make monthly deliveries in specified amounts beginning in October, 1919, and ending in June, 1920, and the Rubber Company promised to pay for the same on sight drafts with bills of lading attached. The Mills began deliveries promptly, but continued them most irregularly, seldom, if ever, complying with the terms of the contract, until in August, 1920—the delivery of many thousand pounds of the contract quantity being overdue—the Rubber Company declined to receive more goods by refusing to honor drafts for the July and August shipments. In September a receiver was appointed for the Rubber Company. He refused a tender made by the Mills for the balance of the fabric. Thereupon the Mills filed with the receiver a claim for $67,024.23 by way of damages for breach of contract, this sum being the difference between the contract price for the undelivered fabric and no price at all, it being represented that on the break in the tire and fabric markets the goods in question had no saleable value.

[1] Before the Mills could recover damages from the receiver for the alleged breach, it was required, of course, to show performance on its part of the terms of the contract or show a valid excuse for failing to make deliveries in the quantities and at the times it had promised. And this it proceeded to do before the receiver in a manner which we shall discuss presently. The receiver, however, being of opinion that the Rubber Company was not under obligation to accept shipments after July, 1920—an opinion in which later the learned district judge concurred—allowed the Mills' claim for $4,300, being the difference

between the contract price and the market price of fabric shipped and not accepted in the month of July, and disallowed its claim for the balance. This is the substance of the order here on appeal.

[2] Confessedly, the Mills was far behind in contract deliveries. In order to excuse its delinquency and to show a right to recover the contract price on a subsequent tender, the Mills takes a position on the law and the facts which is substantially as follows: The parties agree that the New Jersey Uniform Sales Act governs the case. 4 Comp. Stat. 1910, p. 4657. The rule of the federal courts (Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366, followed in Cleveland Rolling Mills Co. v. Rhodes, 121 U. S. 255, 7 Sup. Ct. 882, 30 L. Ed. 920) is that a failure to make deliveries as required by the terms of an installment contract is a breach of the contract which, if seasonably availed of, gives the purchaser the right to rescind the contract or treat it as at an end. The rule prevailing in New Jersey was quite the opposite (Blackburn v. Reilly, 18 Vroom [47 N. J. Law] 290, 1 Atl. 27, 54 Am. Rep. 159; Gerli v. Poidebard Silk Mfg. Co., 57 N. J. Law, 432, 31 Atl. 401, 30 L. R. A. 61, 51 Am. St. Rep. 611; Empire Rubber Mfg. Co. v. Morris, 77 N. J. Law, 498, 72 Atl. 1009) until changed by the New Jersey Uniform Sales Act which brought the law of New Jersey somewhat, if not entirely, within the federal rule. The applicable provision of this law (section 45[2]) is as follows:

"Where there is a contract to sell goods to be delivered by stated installments, which are to be separately paid for, and the seller makes defective deliveries in respect of one or more installments, or the buyer neglects or refuses to take delivery of or pay for one or more installments, it depends, in each case, on the terms of the contract and the circumstances of the case, whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken."

In Du Pont v. United Zinc Co., 85 N. J. Law, 416, 419, 89 Atl. 992, the Supreme Court of New Jersey, giving this provision a literal interpretation, said that the question raised by the section "is ordinarily a question for the jury, but as in other cases, may be so clear that the court may decide it."

As to the "terms of the contract"—one factor in determining the rights of the parties—there is no dispute. The contract called for the sale of named amounts of six kinds of fabric and for monthly deliveries in given quantities, beginning with October, 1919, and running to and including June, 1920. If the transaction had stopped with the contract of July 29, 1919, this suit, doubtless, would not have been brought. But other things were done. They comprise "the circumstances of the case"—the other factor prescribed by the Act in determining the question of rights and liability on a breach of an installment contract. Of these, the first is that on August 7, 1919, the Rubber Company entered into another contract with the Mills for fabric, deliveries to be made substantially in accord with and by reference to the terms of the contract of July 29, 1919. It is claimed by the Mills that the terms of delivery under the two contracts were later varied at the request of the Rubber Company by its letter of October 9, 1919. Assuming this to

be true, it does not change the ultimate situation. What the Rubber Company said was this:

"We had planned to take delivery of the fabric purchased of you *and are perfectly willing to do so, if you prefer to make your shipments as originally specified,* but we are frank in saying that we would prefer to have the shipments come along a little later.

"The shipment originally specified for October could be shipped the latter part of next month. One-half the quantity specified for November could be sent in December and the *regular monthly shipments could start in January.* The other half of the November shipments could be added to the amounts specified for May."

[3] With deliveries on the first two contracts moving along irregularly, the Rubber Company on January 28, 1920, entered into still another contract with the Mills. This, however, was canceled by mutual agreement and a contract for a small quantity of a different fabric was made. Thereafter the three contracts were treated as one. In the letter concluding the third contract, the Rubber Company said:

"In view of this cancellation please start shipment of the balance of tire fabrics still due us, in March, shipping us equal quantities of these goods in March, April, May, June and *July.*"

This request of the Rubber Company and its acceptance by the Mills should be, and indeed has been, regarded by everyone as an alteration in the delivery terms of the now unified contract by extending them one month farther than the first six months of 1920, that is, by extending them into July, 1920. This change was accepted by the receiver and the District Court and is now accepted by us as a final fixation of delivery dates and quantities. Thus it becomes a new starting point. The question now is whether the Mills has shown a legal excuse for not performing this undertaking.

At no time during the term of the contract did the Mills make full deliveries. For justification it says that its irregular deliveries, due more or less to traffic conditions, were not objected to by the Rubber Company but were accepted as though entirely satisfactory. Moreover, the Mills contends that not only were the deliveries satisfactory but they were acquiesced in by the Rubber Company, for evidence of which the Mills produced "monthly reports" of its doings, issued monthly by the Mills and sent monthly to the Rubber Company. These reports embrace the month of August, 1919, and the months from January to November, 1920, inclusive. They purport to show the balance due on the contract of the Rubber Company with the Mills as it stood at the close of business in a given month and to disclose, in tabulated form, each style of fabric by trade number; the price; the amount of the original order; the balance of the order; and "delivery specifications." Under the last heading the amounts and dates of future deliveries of the several fabrics are given. These reports show flagrant variations from the terms of the contract. The Mills contends, however, that the monthly submission of these reports to the Rubber Company and the silence with which the Rubber Company, each month, received them, is evidence of the Rubber Company's acquiescence in the variation of the deliveries from the original contract. Assuming for a moment that this may be true with respect to the first monthly report showing the

first variation from the original contract, it is curious that these monthly reports show not only variations from the delivery terms of the contract but with singular uniformity also show variations of deliveries with respect to each other; that is, each report shows that the delivery specifications of the previous report were not carried out. And so it happened down to and through the month of July, the last month of contract deliveries.

Turning to the question of acquiescence, estoppel or waiver arising from the monthly reports, it is not at all clear, as contended by the Mills, that the Rubber Company was satisfied with the irregular deliveries and acquiesced in monthly variations in the terms of the contract, for among "the circumstances of the case" is correspondence showing that the Rubber Company was not only willing to take "regular monthly shipments" but that, against the representation by the Mills that its stock was running low, requested deliveries and indeed aided in deliveries by sending its truck a number of times from Trenton to Passaic for fabric. As late as April 19, 1920, the Rubber Company wrote the Mills that:

"You have shipped us up to the present time only 3,087¼ pounds of Style 1799 Combed Egyptian Cord Fabric against our order of 42,500 pounds"

—and requested the Mills to "start your scheduled monthly deliveries of 7,882 pounds of the above-mentioned material." The Mills, admitting that "being badly pushed ourselves for this material, we have not made any substantial shipments to you," promised within the next week or two to put a loom on the fabric for the Rubber Company; yet an examination of the Mills' monthly reports for May, June and July (following the correspondence of April) shows that the Mills did not in any month approach "the scheduled monthly deliveries of 7,882 pounds" in that material. There was correspondence in May concerning deliveries in which the Mills pleaded that it was "extremely short" of certain styles.

In these circumstances the contract came to an end on July 31, 1920. In any interpretation of the contract and in any theory of acquiescence or waiver, there was on the Mills' own showing a breach in July deliveries. The Rubber Company declined to honor drafts for shipments made in July. Later, it declined to honor drafts for shipments made in August. It did not in words rescind the contract. Within the terms of the Sales Act it refused "to proceed further." In other words, it stopped. Its reason for stopping, whether because of the persistency of the Mills in making deliveries in quantities and at times different from the contract within any of its variations, or for other reasons, is not of immediate concern. Other circumstances are in the case. One which may have had a bearing on the conduct of both parties was price movements in the fabric and tire markets. After July 29, 1919, the date of the contract, prices in the fabric market rose to double the prices named in the contract. By July, 1920, fabric prices had begun to recede and at the time the evidence was taken it was testified that the market had broken so badly that there were no prices for these fabrics and hence they were wholly without value.

A similar break occurred in the tire market followed by the failure

of the Rubber Company and the appointment of a receiver in September. He immediately took up with the Mills the matter of payment for delayed shipments and refused to receive more goods.

The "terms of the contract" were definite and clear; "the circumstances of the case" were not in dispute. From the contract as altered by mutual agreement and from the inferences properly to be drawn from the circumstances, we are forced to the conclusion that the admitted breach of the contract by the Mills was not waived, but was on the contrary seasonably availed of by the Rubber Company and was "so material as to justify" the Rubber Company, within the meaning of the Act, "in refusing to proceed further" and conferred upon it the "right to treat the whole contract as broken." Therefore the order of the District Court is affirmed.